**ANDERSON v. LEE D. BUTLER, Inc.**

No. 5595.

Court of Appeals of the District of Columbia.

Argued Dec. 8, 1932.

Decided Jan. 23, 1933.

Harry Friedman, of Washington, D. C., for appellant.

T. L. Bartlett, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This case is here in error to the Municipal Court of the District of Columbia. The suit was brought to recover on a promissory note in the sum of $1,036.90 dated November 24, 1930, given to defendant in error, hereafter referred to as plaintiff corporation, in payment for an automobile by David R. Perry and Russell T. Jackson, as makers, and plaintiff in error Carl G. Anderson, hereafter referred to as defendant, as accommodation indorser.

On December 1, 1930, Perry and Jackson, the makers of the note, without the knowledge or consent of this defendant, executed a conditional sales contract to appellee corporation by the terms of which the legal title to the automobile was vested in the corporation to be held as security for the payment of the sum of $1,037.90, on the following terms: $1 in cash, and the balance of $1,036.90 in installments evidenced by promissory notes, one for $350 payable forty-five days after date, and $200 every thirty days thereafter. Neither the first note of $350 due January 15, 1931, nor the original note for $1,036.90, due January 23, 1931, were paid. On January 24th, one day after the original note, but for the bill of sale and new notes, would have become due, Jackson, one of the makers, entered into an agreement, whereby, in consideration of Jackson delivering possession of the automobile to the corporation, the corporation agreed to hold the automobile for two weeks and not sell it or bring suit on the original note during that period. Jackson returned the automobile, and the corporation in accordance with its agreement held it for two weeks and thereafter sold it under the bill of sale for $413.42, which was credited on the original note, leaving a balance of $623.48. Suit was brought for this balance against Perry and Jackson, the makers, and Anderson, the accommodation indorser. Service was not made on Perry and Jackson, and trial was had between plaintiff and Anderson individually. A judgment was entered in the court below for the amount claimed, from which Anderson appeals.

The following is quoted from the record: "It was stipulated and agreed between the parties hereto that the note sued upon was duly presented, dishonored, and protested,

and a notice of such demand and dishonor duly mailed to said Anderson's correct address; that said Anderson testified that he did not receive such notice of demand and dishonor and that he did not have knowledge of the said agreement dated December 1, 1930, or the said agreement of January 24, 1931, nor did he consent to them." The record does not disclose when the note was protested or notice mailed to appellant.

We think it of little importance whether Anderson, the indorser, received notice of the protest or not, since the case turns upon the action of the makers of the note, and the payee, in entering into the contract of December 1, 1930, when, in lieu of the original note, a bill of sale of the car was taken, secured by the notes of the original makers but not indorsed by the appellant, nor was he advised of the action of the parties in this transaction. "The indorser of a note is discharged by a valid agreement, made without his consent, between the holder and the maker, to give time to the maker. And such is the law, although the indorser has had legal notice of non-payment by the maker." Veazie v. Carr, 3 Allen (Mass.) 14.

The conditional sales contract provided, among other things, that upon failure to make any payment when due, the full amount to be paid under the contract, "including any notes given, shall become due and payable forthwith." The notes there referred to must be regarded as notes given to secure the payment under the bill of sale and not the original note, since the obligation on the original note was satisfied by the bill of sale and the notes given to secure the payment of the consideration therefor. This amounted to a new contract of sale entirely changing the terms of the original contract and extending the time and terms of payment far beyond the sixty days provided in the original note. A new obligation was created which could not revive the original note by mere failure to pay the notes, or one of them, given with the bill of sale.

Section 1424, D. C. Code 1924 (D. C. Code 1929, T. 22, § 182), among other things, provides: "A person secondarily liable on the instrument is discharged— * * * Sixth. By an agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable or unless the right of recourse against such party is expressly reserved." No such reservation was made in this case.

It is elementary that a party secondarily liable is discharged if an agreement is entered into between the makers of the note and the payee for an extension of the time of payment without the knowledge or consent of the indorser. It is immaterial whether the extension is made before or after maturity of the note. The rule as to subsequent contracts or agreements between the maker and the payee, to which the indorser is not a party, is well stated in Warner v. Campbell, 26 Ill. 282, 286, as follows: "The rule seems to be well settled, if there be any agreement founded upon a valuable consideration, and operative in point of law, between the maker of a note and the holder, whereby the holder agrees to give credit to the maker, after the note is due, or whereby the payment is postponed to a future day, and this agreement is made without the consent of the indorsers, they will be thereby absolved from all obligation to pay. And it makes no difference whether the agreement was made before the maturity of the note, or after its dishonor, or after the indorsers have been fixed by one presentment and due notice of dishonor. * * * A binding agreement between the creditor and the principal debtor, materially changing the terms of the original, and to which the surety has not expressly or tacitly consented, has the effect to discharge the surety, both at law and in equity, and when this has been done, courts will not stop to inquire whether the surety has been damnified or not."

A case analogous in fact to the one at bar is Timberlake v. Thayer, 71 Miss. 279, 14 So. 446, 447, 24 L. R. A. 231, where Thayer the plaintiff, the payee, and one of the makers of the note entered into an agreement whereby the maker agreed to perform certain services for the payee in payment of the note covering a period extending beyond the maturity of the note. The maker failed to perform his contract, and suit, as in this case, was brought against the indorser Timberlake individually. On this state of facts the court said: "The defendant was only liable secondarily on the note; and if, by the arrangement between Thayer and Vandiver, Thayer's right of action against Vandiver, the maker, was suspended, if but for a day, the indorser was forever discharged, and the mere breach of the contract by which it was suspended could not revive the obligation of the indorser." It follows that the mere failure to pay the first note under the bill of sale did not operate to revive the obligation of defendant indorser on the original note.

The judgment is reversed with costs.